# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ROBERT BLANCAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-08-CV-0974 XR (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:  Honorable Xavier Rodriguez**
**United States District Judge**

### Introduction

Plaintiff Robert Blancas brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Blancas is not disabled for the purposes of the Social Security Act (the Act) and denying Blancas's applications for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI) benefits. Blancas asks the district court to reverse the Commissioner's decision and to render judgment in his favor. In the alternative, Blancas asks the district court to reverse the decision and remand the case for further proceedings.

After considering Blancas's brief in support of his complaint,[1] the brief in support of the

---

[1]Docket entry # 15.

Commissioner's decision,[2] Blancas's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Blancas exhausted his administrative remedies prior to filing this action in federal court. Blancas applied for DIB and SSI benefits on November 8, 2005, alleging disability beginning on October 14, 2005.[5] The Commissioner denied the applications initially and on reconsideration.[6] Blancas then asked for a hearing before an ALJ.[7]

---

[2]Docket entry # 17.

[3]Docket entry # 18.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 81.

[6]*Id*. at pp. 63, 71& 73.

[7]*Id*. at p. 78.

An ALJ held a hearing on August 1, 2007.[8]  The ALJ issued a decision on September 27, 2007, concluding that Blancas is not disabled within the meaning of the Act.[9]  Blancas asked the Appeals Council to review the decision.[10]  Before the Appeals Council acted, Blancas again applied for DIB and SSI.[11]  The Appeals Council remanded Blancas's case to the ALJ, for further evaluation of Blancas's cognitive functioning and his physical impairments.[12]  The ALJ ordered further physical and psychological examination.  The ALJ then conducted a second hearing on April 29, 2008.[13]  The ALJ issued a second unfavorable decision on June 21, 2008.[14]  Blancas asked the Appeals Council to review the second unfavorable decision,[15] but the Appeals Council denied the review, stating that it found no reason to review the ALJ's decision.[16]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  Blancas filed this action seeking review of the Commissioner's decision on December 11, 2008.[17]

---

[8]*Id*. at pp. 231.

[9]*Id*. at pp. 42-55.

[10]*Id*. at p. 37.

[11]*Id*. at p. 93.

[12]*Id*. at p. 34.

[13]*Id*. at p. 276.

[14]*Id*. at p. 10.

[15]*Id*. at p. 230.

[16]*Id*. at p. 3.

[17]Docket entry # 3.

## Issue Presented

Is the ALJ's decision that Blancas is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[18]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[20]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[21]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its

---

[18]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[19]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[20]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[21]*Martinez*, 64 F.3d at 173.

judgment for that of the Commissioner.[22]  Conflicts in the evidence and credibility assessments

are for the Commissioner and not for the courts to resolve.[23]  Four elements of proof are weighed

by the courts in determining if substantial evidence supports the Commissioner's determination:

(1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians,

(3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

education and work experience.[24]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an

application for benefits, and is under a disability, is eligible to receive benefits.[25]  The term

"disabled" or "disability" means the inability to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."[26]  A claimant shall be determined to be disabled only if his physical or

mental impairment or impairments are so severe that he is unable to not only do his previous

work, but cannot, considering his age, education, and work experience, participate in any other

kind of substantial gainful work which exists in significant numbers in the national economy,

---

[22]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[23]*Martinez*, 64 F.3d at 174.

[24]*Id*.

[25]42 U.S.C. § 1382(a)(1) & (2).

[26]42 U.S.C. § 1382c(a)(3)(A).

regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[27]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[28]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[29]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[30]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[31]  The second step involves determining whether the claimant's impairment is severe.[32]  If it is not severe, the claimant is deemed not disabled.[33]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[34]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[35]  If the impairment

---

[27] 42 U.S.C. § 1382c(a)(3)(B).

[28] 20 C.F.R. §§ 404.1520 and 416.920.

[29] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[30] 20 C.F.R. §§ 404.1520 and 416.920.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[36]  If the claimant is still able to do his past work, the claimant is not disabled.[37]  If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[38]  If the claimant cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[39]  Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[40]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[41]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step four.  At step one, the ALJ found that Blancas had not engaged in substantial gainful activity since his alleged on-set date of

---

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]*Leggett*, 67 F.3d at 564.

[40]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[41]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

October 14, 2005.[42]  The on-set date is the day Blancas maintains he hurt his back while working

at a meat packaging company.  At step 2, the ALJ found that Blancas has the following severe

impairments: degenerative disc disease of the lumbar spine and borderline intellectual

functioning.[43]  Blancas's mental impairment served as the basis for receiving SSI as a child.  The

benefits were stopped at age 26 because Blancas was performing substantial gainful activity.

Blancas worked for eight years.  Blancas did not apply for DIB and SSI based on mental

impairment; he applied for benefits based on physical impairment—*i.e.*, back injury.  At step

three, the ALJ determined that Blancas's impairments do not meet or medically equal an

impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[44]  At step four,

the ALJ found that Blancas can perform his past relevant work as a janitor and machine packer.[45]

Blancas worked as a machine packer when he hurt his back.  Even though the ALJ was not

required to proceed beyond step four, he conducted a step five analysis and determined that

Blancas could do other work that exists in significant numbers in the national economy.[46]

**C.  Blancas's Allegations of Error**

    <u>Allegations relating to Blancas's mental impairment</u>.  Although not the basis for his

---

[42]*Id*. at p. 15.

[43]*Id*. at p. 16.

[44]*Id*. at p. 16.

[45]*Id.* at p. 26.

[46]*Id*. at p. 25.

applications for benefits,[47] Blancas now relies on his mental impairment as a basis for disability. Blancas maintains his mental impairment meets listing 12.05C—a listing for mental retardation.[48]  Blancas maintains the ALJ erred by requiring him to demonstrate deficits in adaptive functioning in order to meet listing 12.05C.  Blancas also contends that the ALJ ignored 99% of the medical expert's testimony and choose only testimony indicating that Blancas does not meet the listing.[49]  Blancas characterizes the ALJ's comments about the medical expert's testimony as showing "his single-minded obsessive belief that a person who has worked cannot meet the criteria of Listing 12.05C."[50]

The introductory criterion for listing 12.05 provides as follows: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  If a claimant meets this introductory criterion, he must meet one of four levels of severity to satisfy the listing.  To satisfy the "C" severity requirement, the claimant must demonstrate "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Blancas has IQ scores falling within the criterion range.

Blancas's argument centers on the introductory criterion: whether Blancas has

_____

[47]*Id*. at p. 99 (stating that the reason he stopped working was because of severe back pain), p. 118 (denying that he has a mental or emotional problem that limits what he is able to do) & p. 254 (testifying that he stopped working because he got hurt).

[48]If Blancas meets listing 12.05C, he is disabled under the Act.

[49]Docket entry # 15, p. 11.

[50]*Id*. at p. 12.

significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. Blancas maintains that an annotation of "EMR"—educable mentally retarded—in his school records shows that he has significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. According to Blancas, this evidence coupled with his IQ test scores shows that he meets listing 12.05C.

The ALJ viewed the listing 12.05C criteria differently, reasoning that "[a] finding of disabling impairments due to mental retardation does not rest entirely on test results of intellectual functioning; adaptive functioning is also part of the equation."[51] Because the ALJ found that Blancas "has repeatedly demonstrated in the real world quite high adaptive functioning despite his mental limitations,"[52] the ALJ found that Blancas did not have the requisite "deficits in adaptive functioning" and determined that Blancas did not meet listing 12.05C. Blancas maintains the ALJ "simply doesn't get it," and that the fact that Blancas worked for eight years before hurting his back does not prevent him from meeting listing 12.05C.[53]

Blancas relies on the decision in *Randall v. Astrue*, in which the district judge determined that the ALJ and the magistrate judge mis-interpreted the introductory criterion of listing 12.05C by requiring the claimant to demonstrate actual deficits in adaptive functioning, rather than requiring the claimant to show that her deficits existed before she reached the age of 22. The ALJ in this case took the same essential approach. The district judge in *Randall* explained as

---

[51]SSA record, p. 20.

[52]*Id*. at p. 20.

[53]Docket entry # 18, p.6.

follows:

> It appears all misinterpreted the "introductory paragraph" as requiring a *separate and independent evaluation* of whether the claimant actually has deficits in adaptive functioning *beyond what is defined within Listing 12.05* rather than merely requiring whatever necessary level of adaptive disfunction, as defined by the regulation, exist, *and have "initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."*[54]

The district judge reasoned that "the purpose of the 'introductory paragraph' is not to determine whether deficits in adaptive functioning exist and how severe the deficits are, that is done within the text; rather, the purpose of the introductory paragraph is to determine whether those deficits existed before the claimant reached the age of 22."[55]   In this case, the ALJ found that Blancas failed to show "deficits in adaptive functioning;" thus, the evidence of deficits in adaptive functioning manifested before age 22 was of no consequence.

The district judge's decision has no impact on this case because the Fifth Circuit recently determined that the ALJ in *Randall* did not err.  The Fifth Circuit determined that listing 12.05C has three requirements: (1) a substantive requirement: "significantly subaverage intellectual functioning with deficits in adaptive functioning," (2) a temporal requirement: "initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22," and (3) a severity requirement:[56] here, subsection C requiring "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  The

---

[54]*Randall v. Astrue*, No. 06-2093, 2008 WL 891931 (W.D. La. Apr. 1, 2008), at * 2.

[55]*Id*. at *3.

[56]*See Randall v. Astrue*, 570 F.3d 651, 656 (5th Cir. 2009).

Fifth Circuit adopted the Seventh Circuit's explanation about the role of the substantive requirement.[57]  That explanation follows:

> The key term in the introductory paragraph of section 12.05 of the regulation, so far as bears on this case, is "deficits in adaptive functioning."  The term denotes inability to cope with the challenges of ordinary everyday life.  If you cannot cope with those challenges, you are not going to be able to hold down a full-time job.[58]

Ultimately, the Fifth Circuit determined that the ALJ had not erred by determining that claimant Randall failed to exhibit significantly subaverage general intellectual functioning with deficits in adaptive functioning.[59]  Like the ALJ in *Randall*, the ALJ in this case did not err by requiring Blancas to show he has deficits in adaptive functioning.[60]  Under the Fifth Circuit's opinion in *Randall*, the ALJ made no error of law.

As for the ALJ's determination that Blancas failed to demonstrate deficits in adaptive functioning, substantial evidence supports the determination—in particular, a report of clinical interview/mental status exam by Dr. Sean G. Connolly.[61]  During Dr. Connolly's interview, Blancas provided a fairly detailed personal history, to include his family, education, medical, and employment history.  Despite test scores placing him in the "significantly subaverage" range of

---

[57]*See Randall*, 570 F.3d at 660 (adopting the Seventh Circuit's construction of the diagnostic criteria of section 12.05).

[58]*Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (internal citation omitted).

[59]*See Randall*, 570 F.3d at 662.

[60]*See also Caradine v. Astrue*, No. 1:08CV305-DAS, 2009 WL 3769771 (N.D. Miss. Nov. 10, 2009), at *4 ("[I]n order to meet the introductory paragraph's diagnostic criteria, the claimant must show: 1) significantly subaverage general intellectual functioning; 2) deficits in adaptive behavior; and 3) have manifested deficits in adaptive behavior before age 22.").

[61]SSA record, p. 171.

intellectual functioning,[62] Dr. Connelly opined that Blancas's "overall cognitive potential is higher than the total measured IQ score indicates."[63] Dr. Connolly summarized as follows:

> While most of his scores appear to be in the Mild Mental Retardation Range of intelligence, based on his clinical interview and his ability to give all of his own background information and the fact that he has been able to function independently in employment and in the community in the past, he appears to be functioning in the Borderline range of intelligence. He does however appear to have severe neurocognitive deficits.[64]

The record also contains a diagnosis of mental retardation and lower IQ scores,[65] but a medical expert attributed the differences to this case being a borderline case.[66] The medical expert agreed with Dr. Connolly that Blancas's actual functioning is "more borderline intellectual functioning" despite having "an IQ below 70."[67] The expert explained that Blancas's functioning is "clearly above 60 in terms of his ability to do [substantial gainful activity.]"[68] When pressed by Blancas's advocate about whether Blancas meets listing 12.05C, the medical expert agreed that Blancas's

---

[62]Blancas scored on the Wechsler Adult Intelligence Scale for intelligence as follows: verbal IQ: 68, performance IQ: 74, and full scale IQ: 68. According to Dr. Connolly, "[t]hese scores show limitations in cognitive ability that will restrict [Blancas] in a variety of training and employment opportunities." SSA, record, p. 174.

[63]*Id*. at p. 175.

[64]*Id*. at p. 176.

[65]*See id*. at p. 164-70 (mental evaluation for determination of disability by psychological associate Cilla Stultz reporting the following tests scores—verbal IQ: 60, performance IQ: 68, and full scale IQ: 60—and opining that Blancas "demonstrates significant cognitive impairment and meets diagnostic criteria as an individual with mental retardation").

[66]*Id*. at pp. 317-20, 324-25.

[67]*Id.* at p. 317.

[68]*Id*. at p. 318.

test scores meet the listing.[69]   Although Blancas maintains the ALJ ignored the medical expert's testimony,[70] the ALJ's opinion reflects consideration of all the medical expert's testimony.

The medical expert explained that "there are people who are borderline intellectually – who can do certain things like janitor jobs or something," but once they get an injury that prevents them from doing the type of work they have done, they meet listing 12.05C.[71]   In this case, Blancas worked as janitor.   The vocational expert testified that a person with Blancas's residual functional capacity impairment can do janitorial work.[72]

Considering Blancas's adaptive functioning, the ALJ wrote the following:

There is no doubt that the jobs performed up until he stopped in October 2005 were real, non-supported, non-accommodated jobs and he earned real wages for real work.   Such activity is highly suggestive of good adaptive functioning abilities (get to work on time; follow instructions; work at an adequate pace; get along with coworkers and supervisors).   The results obtained on testing for adapted behavior simply do not reflect the actual, factual adaptive functioning that the claimant has demonstrated.   He has worked and apparently successfully for a number of years, stopping, not because he has mental limitations but due to back pain.   In fact, in his application for disability, he stated does not have mental or emotional problems that limit what he is able to do.   He is married (or has a common-law wife . . .), lives in a house, performs some household chores, watches television shows such as "CSI" and "Gray's Anatomy" that require the ability to follow a plot and story line, and has been able to navigate with fair success the daily challenges of communication, home living, and social functioning.   Presumably, during the years he worked as a janitor, laborer, and

---

[69]*Id*. at pp. 324-25.

[70]The ALJ's opinion states the following about the medical expert's testimony: "The medical expert testified claimant met Listing 12.05C mentally, yet the medical expert was not surprised claimant could work for eight years.   But it is claimant's history, not his test results, that are crucial here."   *Id*. at p. 19.

[71]*Id*. at p. 326.

[72]*Id*. at p. 330.   The vocational expert also testified that Blancas could perform his past relevant work as a machine packer.

machine operator, he was able to arrange transportation to and from his work. . . . [T]he record reflects work activity after the alleged onset date. Although that work activity does not apparently constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have been greater than he has generally reported. He was working at a deli/convenience store for about nine hours a week, apparently able to follow simple directions and perform simple job tasks, such as general cleaning, bussing tables, mopping, sweeping, and loading and unloading items. Before that, he was able to operate a shrink-wrap machine for two years until he stopped work. . . . There is no evidence in the record that he was let go from any of his jobs for failure to perform satisfactorily.[73]

Substantial evidence supports these findings.[74]

Allegations relating to Blancas's physical impairment. Blancas also maintains the ALJ played doctor in regard to evidence about his physical impairment.[75] Blancas complains in particular about the ALJ's treatment of Dr. Jerjis J. Denno's opinion that Blancas can not sustain any type of work over an eight-hour day. Blancas complains that only a state agency non-examining doctor opined that he can perform light work.

Dr. Denno is Blancas's only treating physician. Blancas saw Dr. Denno on October 14, 2005—Blancas's alleged on-set date.[76] Blancas told Dr. Denno that he developed pain in his

---

[73]*Id*. at pp. 19-20.

[74]*See id.* at pp. 90-91 (earnings history for 1993 to 2005); p. 171 (reporting to Dr. Connolly that he worked as a janitor at the mall and worked at a door factory for three years, and that he was never fired from a job and has had no difficulty getting along on the job); pp. 238-45 (testifying that he works at a convenience store on Monday, Wednesdays and Fridays, doing general cleaning, sweeping and mopping the floors, bussing tables, and assisting the owner with shopping); p. 289 (testifying that he worked steadily for eight years and then stopped because he hurt his back).

[75]Docket entry # 15, p. 21.

[76]Dr. Alejandro Garcia at Texas Med Clinic referred Blancas to Dr. Denno. Blancas saw Dr. Garcia on October 6, 2005 and requested a referral to a back specialist. *Id*. at p. 133.

lower back at home when he was coughing.[77]  Dr. Denno prescribed some pain medication and

told Blancas not to work for a week.  When Blancas returned two weeks later, he reported that

his pain improved, but the pain recurred when he returned to work.[78]  Dr. Denno ordered an MRI

of Blancas's lumbar spine.[79]  The MRI showed disc desiccation at L5-S1 with moderate sized

broad-based midline disc protrusion.[80]  After reviewing the MRI, Dr. Denno diagnosed Blancas

with a large herniated disc at L4-5 with lumbar radioculopathy and moderate disc protrusion at

L5-S1.[81]  Dr. Denno recommended microscopic decompression and discectomy at L4-5, opining

that Blancas would not derive any long term relief from conservative treatment.[82]  Dr. Denno

stated that Blancas "remains totally and temporarily disabled."[83]  When Blancas returned for his

last visit on December 12, 2005, he asked Dr. Denno whether his back injury could have

occurred at work.  Dr. Denno opined that it was more than likely not related to Blancas's work.[84]

Dr. Denno stated that Blancas remained disabled and hoped Blancas could return to work after

surgery.[85]  The December 12, 2005 treatment note is the last treatment note for Blancas's back

---

[77]*Id*. at p. 141.

[78]*Id*. at. p. 140.

[79]*Id*. at p. 138.

[80]*Id*. at p. 139.

[81]*Id*. at pp. 136-37.

[82]*Id*. at p. 137.

[83]*Id*.

[84]*Id*. at 136.

[85]*Id*.

until May 5, 2008. During the May 5, 2008 visit Blancas reported that he had been working at the convenience store for about a month, but that he was in too much pain to continue working.[86] Dr. Denno observed that Blancas was in no acute distress and walked with a normal gait. Dr. Denno found that Blancas had restricted forward flexion secondary to pain and muscular tightness.[87] Dr. Denno opined that Blancas still needed lumbar surgery. He further opined that Blancas is incapable of gainful employment and cannot sustain work over an eight-hour day. He stated that Blancas remains totally disabled.[88] The ALJ was not persuaded by this opinion.

"[O]rdinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability. The ALJ may give less weight to a treating physician's opinion when 'there is good cause shown to the contrary[.]'"[89] About Dr. Denno's opinions, the ALJ wrote the following:

> [During the May 2008 visit,] Dr. Denno indicated claimant could not work and "had been unable to find gainful employment or has not had any type of significant employment since his problem started in 2005," . . . . This is false. Dr. Denno did not know of claimant's part time job. It is also noteworthy that at Exh. 9F8, Dr. Denno states the left L5 nerve root is compressed per the November 11, 2005 MRI. That MRI . . . does not show this.
> ****
> As far as Dr. Denno's opinion in December 2005 that the claimant "remains" disabled, the undersigned notes that no durational timeframe was given nor were functional limitations described. Moreover, the claimant has been working at non-sedentary tasks in his part-time job at the deli-convenience store[], mopping,

---

[86]*Id*. at. p. 215.

[87]*Id*. at p. 216.

[88]*Id*.

[89]*Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (internal citations omitted).

sweeping, bussing tables, loading and unloading, which would tend to vitiate the
credibility of both Dr. Denno's opinion and the claimant's allegations of disabling
back pain.[90]

This explanation constitutes good cause for giving little weight to Dr. Denno's opinion that

Blancas is disabled because Blancas's demonstrated capacity contradicts Dr. Denno's opinion.

Moreover, whether a claimant is disabled is a legal determination reserved for the

Commissioner.[91]  Without the statements that Blancas is disabled, Dr. Denno's opinion supports

the ALJ's determination that Blancas can perform his past relevant work as a janitor and machine

packer because the determination reflects that Blancas is limited in his ability to lift, carry, bend,

stoop, crouch, kneel and crawl.

Blancas also complains about the ALJ's treatment of Dr. William W. Janes's opinion.[92]

The ALJ sent Blancas to Dr. Janes after the case was remanded.  Dr. Janes opined that it would

be very difficult for Blancas to hold down a full time job, recommending that Blancas be

permitted to participate in part time work at a sedentary level.[93]  The ALJ gave "very little

weight" to this opinion for the following reason:

> [H]e only saw the claimant one time and his findings are not consistent with other
> examinations including those of Dr. Denno who examined claimant on several
> occasions.  Claimant was working part time at that time.  The conclusion that a
> person is disabled is reserved to the Commissioner of the Social Security

---

[90]SSA record, pp. 22-23.

[91]*See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating
doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable
to work.'  These determinations are legal conclusions that the regulation describes as 'reserved to
the Commissioner.'").

[92]SSA record, p. 185.

[93]*Id*. at p. 186.

> Administration. Dr. Janes failed to provide objective medical support for his opinions which are inconsistent with claimant's activities.[94]

Substantial evidence supports the ALJ's explanation about inconsistencies. For example, Dr. Janes stated that Blancas used a walker,[95] but Blancas testified that he does not use a walker.[96] Dr. Janes opined that Blancas can stand or walk for only five minutes,[97] but Blancas testified that he worked at the convenience store for three hours on Mondays, Wednesdays and Fridays.[98]

Rather than playing doctor, the ALJ reconciled medical opinions with Blancas's demonstrated functional capacity. Ultimately, the ALJ determined that Blancas maintained the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; walk/stand six hours in an eight-hour day and sit without limitations; occasionally bend, stoop, crouch, kneel and crawl; is illiterate, but is able to speak English and Spanish reasonably well; and can do simple repetitive jobs.[99] This assessment is supported by a physical residual functional capacity assessment by Dr. Jeanine Kwun dated Feb. 8, 2006,[100] an internal medicine

---

[94]*Id*. at p. 22.

[95]*Id*. at p. 188.

[96]*Id*. at p. 311.

[97]*Id*. at p. 188.

[98]*Id*. at pp. 282-83.

[99]*Id*. at 20.

[100]*Id*. at p. 143 (opining that Blancas can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk about six hours in an eight-hour day; and sit about six hours in an eight-hour day).

consultative examination by Dr. Amanda Chavez on January 7, 2008,[101] a internal medicine consultative examination by Dr. Jose Reyes on January 7, 2008,[102] and Dr. Janes's physical examination finding that Blancas had a normal range of motion in his neck, shoulders and upper extremities.[103]

## Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Blancas's request for relief (docket entry # 3) and AFFIRMING the Commissioner's decision.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[104] **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.** A party filing objections

---

[101]*Id*. at p. 180 (finding tenderness to palpation over the lower thoracic spine and lumbar spine, but also finding that Blancas can squat and rise without pain or difficulty, bend to touch the floor, and walk heels and toes without difficulty).

[102]*Id*. at p. 180 (finding full range of motion in cervical, thoracic and lumber spine and that Blancas can bend to touch the floor).

[103]*Id*. at p. 185.

[104]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[105] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[106]

**SIGNED** on December 8, 2009.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[105] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[106] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).